A10A0533, A10A0550. TITSHAW et al. v. NORTHEAST
GEORGIA BANK (two cases).
(697 SE2d 837)

PHIPPS, Presiding Judge.

Chuck Titshaw, David Healan, and Jackson County Investment Ventures, LLC appeal from two superior court orders confirming foreclosure sales of real property. In both cases, the appellants contend that Northeast Georgia Bank, the entity that obtained the confirmations, was not the proper party to do so. We find no merit in this contention. In Case No. A10A0533, the appellants contend additionally that the superior court confirmed the foreclosure sale underlying that case without a sufficient evidentiary basis for doing so. We agree. Therefore, the judgment in Case No. A10A0533 is reversed, and the judgment in Case No. A10A0550 is affirmed.

In October 2007, Jackson County Investment Ventures borrowed money from Freedom Bank of Georgia. In connection therewith: (i) promissory notes were executed by Titshaw and Healan as members of the company; (ii) the company also executed deeds to secure debt in favor of Freedom Bank, conveying security interests in certain real properties; and (iii) Titshaw and Healan executed personal guaranties. After the company and the guarantors defaulted on the underlying loan obligations, Freedom Bank conducted nonjudicial foreclosure sales upon the real estate securing the loans. In January 2009, within 30 days after the foreclosure sales, Freedom Bank reported the sales to a superior court judge, applied for confirmations, and sought hearings thereon.[1]

But prior to the confirmation matters being heard, as the parties agreed below, the Federal Deposit Insurance Corporation (FDIC) was appointed receiver for Freedom Bank. The record shows that the notes and guaranties at issue in these appeals were transferred to Northeast Georgia Bank. And that bank, rather than Freedom Bank, then pursued and ultimately obtained the two confirmation orders appealed here.

In arguing to the superior court that Northeast Georgia Bank was not the proper party to pursue the confirmations, appellants'

---

[1] See OCGA § 44-14-161.

counsel relied on language within the confirmation statute, OCGA § 44-14-161:

> When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, . . . no action may be taken to obtain a deficiency judgment unless the *person instituting the foreclosure proceedings* shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.[2]

Counsel further asserted that the confirmation statute was to be strictly construed as it was in derogation of common law.[3] Thus, counsel summarized, "[O]ur position is that the FDIC as receiver for Freedom Bank is the proper party, is the only proper party."

1. The appellants contend that the superior court erred in rejecting their position and thus allowing Northeast Georgia Bank to seek the confirmations under OCGA § 44-14-161. We disagree.

The salient question raised by this contention concerns the intendment of the cited statutory language: "person instituting the foreclosure proceedings."[4] "It is, of course, fundamental that the cardinal rule to guide the construction of laws is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose."[5]

> Prior to the enactment of [OCGA § 44-14-161's predecessor], it was the law of Georgia that in the event of insufficient return upon the sale of real estate as collateral, a suit could be maintained . . . to collect the deficiency. *[The confirmation statute] does not eliminate this claim* but subjects it to the condition that the foreclosure sale under power be given judicial approval. From the perspective of history and a consideration of the economic factors then extant, it is evident the intendment of the General Assem-

---

[2] OCGA § 44-14-161 (a) (emphasis supplied).

[3] *Mobley v. Commonwealth Mtg. Assurance Co.*, 264 Ga. 652, 654 (450 SE2d 205) (1994) (confirmation statute is in derogation of the common law and must be strictly construed).

[4] The interpretation of a statute is a question of law, which is reviewed de novo. *Jenkins v. State*, 284 Ga. 642, 645 (2) (670 SE2d 425) (2008).

[5] *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981) (citations and punctuation omitted).

bly in 1935, in adopting this [statute's predecessor], was to provide for debtor relief.[6]

Thus, as the Supreme Court of Georgia has more recently summarized, "OCGA § 44-14-161 is a debtor's relief statute and is in derogation of the creditor's common-law right to seek a deficiency judgment after nonjudicial foreclosure under power of sale."[7] The Court has held that the statute allows for a court "to pass upon the notice, advertisement and regularity of the sale and to re-insure that the property was sold for a fair value. [The statute] provides debtors with formidable protection against gross deficiency judgments."[8] And regarding the narrow applicability of the confirmation statute, the Court has explained:

> The only purpose of the confirmation statute is to subject the creditor's potential deficiency claim to the condition that the foreclosure sale under power be given judicial approval. The confirmation proceeding does not result in a personal judgment and it does not adjudicate the title of the property sold. Except as to the confirmed amount of the sale, *it does not establish the liability of any party with regards to the indebtedness.*[9]

In this case, it is undisputed that Freedom Bank — the original creditor of the underlying notes and the entity that instituted the foreclosure proceedings — assigned the notes to Northeast Georgia Bank.

> An assignment is an absolute, unconditional, and completed transfer of all right, title, and interest in the property that is the subject of the assignment. . . . Moreover, in the absence of a contrary intention, an assignment usually passes as incidents all ancillary remedies and rights of

---

[6] *First Nat. Bank & Trust Co. v. Kunes*, 230 Ga. 888, 890 (199 SE2d 776) (1973) (emphasis supplied), citing Ga. L. 1935, pp. 381-382 and *Calhoun v. Phoenix Mut. Life Ins. Co.*, 46 Ga. App. 807 (169 SE 262) (1933) (exercise of the power of sale in the security deed does not operate as a cancellation and satisfaction of the secured debt and an election to take the land and waive the debt; rather the grantee in the security deed may maintain an action against the grantor for the remainder of the indebtedness).

[7] *Vlass v. Security Pacific Nat. Bank*, 263 Ga. 296, 298 (2) (430 SE2d 732) (1993) (citation omitted). "A deficiency judgment is the imposition of personal liability on mortgagor for unpaid balance of mortgage debt after foreclosure has failed to yield full amount of due debt." *Iwan Renovations v. North Atlanta Nat. Bank*, 296 Ga. App. 125, 127 (1) (673 SE2d 632) (2009) (citation, punctuation and footnote omitted).

[8] *Wall v. Fed. Land Bank of Columbia*, 240 Ga. 236, 237 (1) (240 SE2d 76) (1977).

[9] *Vlass*, supra at 297 (1) (citation and punctuation omitted; emphasis supplied).

action which the assignor had or would have had for the enforcement of the right or chose assigned.[10]

No contrary intention is shown in the relevant documents. Instead, each note defined "Borrower" as Jackson County Investment Ventures, and "Lender" to include Freedom Bank, as well as "its successors and assigns."[11] And the "Remedies" paragraphs of the notes acknowledged that, upon default by the Borrower, the Lender had "any remedy you have under state or federal law." Accordingly, to the extent deficiencies remained after the foreclosures with respect to the underlying indebtedness, claims therefor belonged to Northeast Georgia Bank, as Freedom Bank's assignee.[12]

In reaching this conclusion, we have declined to strictly apply the cited language of the confirmation statute — "person instituting the foreclosure proceedings." A strict application thereof would effectively deprive certain creditors — specifically, assignees of notes after a related nonjudicial foreclosure sale of real estate — of the opportunity to pursue claims for deficiencies.[13] While the confirmation statute unquestionably provides for debtor relief by establishing a "procedure which . . . *limits* the creditor's common-law right to seek a deficiency judgment,"[14] we find nothing to support a conclusion that the General Assembly intended further to *extinguish* that common-law right merely because the underlying note was assigned to another creditor after the foreclosure sale.[15] Notwithstanding the plain language of the statutory provision cited by the appellants, "[t]he judiciary has the duty to reject a construction of a statute

---

[10] *Allianz Life Ins. Co. &c. v. Riedl*, 264 Ga. 395, 397 (2) (444 SE2d 736) (1994) (citations and punctuation omitted); see *Bank of Danielsville v. Seagraves*, 167 Ga. App. 135, 140 (305 SE2d 790) (1983) ("Assignment of a note means transfer of the title to the instrument so that the recipient may bring an action thereon.") (citation omitted) (physical precedent only).

[11] In the related personal guarantees executed by Titshaw and Healan, the individuals agreed to pay the indebtedness owed by Jackson County Investment Ventures to "Lender," defined therein so as to include Freedom Bank of Georgia and its "successors and assigns." And each underlying deed to secure debt defined "Grantee" as including that party's "successors and assigns."

[12] See OCGA § 44-12-24; *Calhoun*, supra.

[13] "A 'deficiency' is incurred under OCGA § 44-14-161 when any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed." *Mobley*, supra at 654, n. 1 (punctuation omitted).

[14] *Vlass*, supra at 298-299 (2) (emphasis supplied).

[15] See generally id. at 297 (1) (confirmation proceeding does not establish liability of any party with regard to the indebtedness); *First Nat. Bank & Trust Co.*, supra (confirmation statute does not eliminate deficiency judgment); *Marler v. Rockmart Bank*, 146 Ga. App. 548, 549-550 (246 SE2d 731) (1978) (foreclosure of security deed without obtaining confirmation of foreclosure sale did not extinguish debt but had effect only of foreclosing right to sue for deficiency judgment, thus sale of two parcels pursuant to deeds to secure debt for less than amount owed left remaining amounts due on notes).

which will result in unreasonable consequences or absurd results not contemplated by the legislature."[16] The construction of the confirmation statute that comports with the purpose of the confirmation statute and does not lead to unreasonable consequences or absurd results is that the language at issue here — the "person instituting the foreclosure proceedings" — includes the creditor assigned the note after such proceedings.[17] Consequently, when a note is so assigned, assignees, such as Northeast Georgia Bank, "will be required to comply with the confirmation statute before instituting any action for a deficiency judgment."[18] Given this interpretation, the confirmation statute provides, under circumstances presented here, the specific debtor relief intended by the legislation.[19]

In reaching this result, we have rejected also appellants' argument that *Darby & Assocs. v. Fed. Deposit Ins. Corp.*[20] controls these cases to an outcome that the FDIC is the only proper party to pursue confirmations of the foreclosure sales. In *Darby*, within thirty days after the foreclosure sale instituted by two creditors, one of the creditors was adjudicated insolvent and the other filed a bankruptcy petition.[21] Both creditors continued in existence, but could function only through their respective liquidator (FDIC) and bankruptcy trustee.[22] Given their fiduciary capacities, we held that the liquidator and the trustee were "person[s] instituting the foreclosure [proceedings]" as contemplated by the confirmation statute.[23] In so holding, we reasoned that the legislature did not intend for those types of changes in creditor circumstances to result in the changes to the

---

[16] *Haugen v. Henry County*, 277 Ga. 743, 746 (2) (594 SE2d 324) (2004) (citation omitted); *In the Interest of D. H.*, 285 Ga. 51, 54 (3) (673 SE2d 191) (2009) ("literal meaning of the statute prevails unless such a construction would produce unreasonable or absurd consequences not contemplated by the legislature") (citation and punctuation omitted).

[17] See *Hollowell*, supra at 681 (legislative intent prevails over the literal import of words); see generally *Fed. Deposit Ins. Corp. v. Windland Co.*, 245 Ga. 194 (264 SE2d 11) (1980) (refusing to literally apply language within confirmation statute, where to do so would deprive federal courts of jurisdiction to confirm a foreclosure sale in a case which is otherwise subject to federal jurisdiction); *Darby & Assocs. v. Fed. Deposit Ins. Corp.*, 141 Ga. App. 78, 79 (1) (232 SE2d 615) (1977) (refusing to literally apply language within confirmation statute, where to do so would result in changes to the rights of debtors not intended by legislature), disapproved on other grounds, *Cartersville Developers v. Ga. Bank & Trust*, 292 Ga. App. 375, 377 (664 SE2d 783) (2008).

[18] *Iwan Renovations*, supra at 129 (2) (citations, punctuation and footnotes omitted).

[19] See *Vlass*, supra (regarding sole purpose of confirmation statute); accord *Iwan Renovations*, supra ("When the creditor wishes to exercise a power of foreclosure prior to obtaining a judgment on the note and thereby save time and expense, (it) will be required to comply with the confirmation statute before instituting any action for a deficiency judgment.") (citations, punctuation and footnotes omitted).

[20] Supra.

[21] Id. at 78.

[22] Id. at 79.

[23] Id. at 78-79.

rights of debtors.[24] *Darby* is inapposite to this case, however. Unlike the underlying circumstances in *Darby*, the evidence was uncontroverted in this case that the underlying notes — the apparent bases of impending claims for indebtedness — had been assigned to another by that creditor who had instituted the foreclosure proceedings.

The superior court correctly construed the cited statutory provision and thereupon properly allowed Northeast Georgia Bank to pursue the confirmations. Because Case No. A10A0550 raises no other contention, the judgment in that case is affirmed.

2. Appellants assert an evidentiary challenge to the confirmation order at issue in Case No. A10A0533. Specifically, they point out that the trial court was provided no evidence of the foreclosure sale amount. The confirmation statute pertinently states, "The court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale."[25] The appellants acknowledge that Northeast Georgia Bank presented evidence that the fair market value of the property as of the date of the foreclosure sale was $595,000. They argue, however, that without a showing also of the amount of the foreclosure sale, the trial court had no adequate basis to ascertain whether, as contemplated by the confirmation statute, "the property so sold brought its true market value on such foreclosure."

> In a proceeding for confirmation of a foreclosure sale of real property, the judge sits as a trier of fact, and his findings and conclusions have the effect of a jury verdict. Where the trial judge, sitting as the trier of the facts, hears the evidence, his finding based upon conflicting evidence is analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.[26]

The foreclosure sale amount is a matter of fact. In this case, neither evidence nor stipulation of such amount was presented to the trial judge.[27] Moreover, at the confirmation hearing, appellants' counsel pointed out that, in the report of the sale to the judge of the

---

[24] Id. at 79.

[25] OCGA § 44-14-161 (b).

[26] *Trefren v. Freedom Bank of Ga.*, 300 Ga. App. 112, 113 (684 SE2d 144) (2009) (punctuation and footnote omitted).

[27] See generally *Lewis v. First Nat. Bank of Atlanta*, 141 Ga. App. 338, 341 (233 SE2d 465) (1977) (better practice is to conduct confirmation hearing by way of testimony, but affidavit evidence by agreement will satisfy requirements of confirmation statute).

superior court,[28] Freedom Bank recited that the property at issue was sold to "the sole and highest bidder, for a bid of $550,000." Given that the report itself indicated that the sales price was less than the fair market value and that there was no evidence or stipulation of the foreclosure sale amount, appellants' counsel argued that the foreclosure sale could not be confirmed.

Appellee's counsel rebutted that the $550,000 amount was a typographical error and asserted that the property actually sold for $595,000. In its order confirming the sale, the superior court found that the recitation within the report "that the property was sold to the highest bidder at '$550,000.00' rather than the price of $595,000.00 *as indicated by the rest of the pleadings* was a typographical error."[29]

On appeal, appellants contend that neither the pleadings nor the evidence adduced at the confirmation hearing showed that the property sold for (at least) $595,000. Appellee cites nothing in the record in response to this contention,[30] and we find nothing. Under these circumstances, because no construction of the record would have authorized a finding that the sale price was at least the true market value of the property, the superior court erred by confirming the foreclosure sale.[31]

*Judgment reversed in Case No. A10A0533. Judgment affirmed in Case No. A10A0550. Miller, C. J., and Johnson, J., concur.*

DECIDED JUNE 30, 2010.

*Russell, Stell, Smith & Mattison, John E. Stell, Jr.*, for appellants.

*Strickland, Chesnutt & Lindsay, Samuel L. Chesnutt, Vandiver & Vandiver, S. Ernest Vandiver III*, for appellee.

---

[28] See OCGA § 44-14-161 (a).

[29] (Emphasis supplied.)

[30] See Court of Appeals Rule 25 (b) (1) (brief of appellee shall point out material inaccuracy or incompleteness of appellant's statement of facts and any additional statement of facts deemed necessary, plus such additional part of the record or transcript deemed material), (c) (2) (ii) (a contention that certain matters are not supported by the record may be answered by reference to particular pages where they appear).

[31] See *Cartersville Developers*, supra.