A92A1783. TURNER et al. v. COMMONWEALTH MORTGAGE ASSURANCE COMPANY.
(428 SE2d 398)

BLACKBURN, Judge.

Commonwealth Mortgage Assurance Company filed suit against Michael and Julia Turner and others, seeking to recover the amount owed under an indemnity agreement executed by the Turners in favor of Commonwealth. The trial court granted summary judgment to Commonwealth and denied the Turners' motion for summary judgment, and the Turners appeal.

The agreement in issue was executed by the appellants at a real estate closing at which the appellants purchased a condominium and executed a note and security deed in favor of Central Mortgage Company. The purchase price of the property was $75,900. Commonwealth required the appellants to execute an investor loan indemnity agreement in its favor before issuing a private mortgage insurance policy covering the lender against loss by reason of the borrowers' default. The agreement provided that the appellants were obligated to reimburse Commonwealth for all amounts Commonwealth might be required to expend under the policy. The appellants' mortgage subsequently was assigned to Meritor Savings Bank, and when the appellants defaulted, Meritor foreclosed and bought the condominium property at the foreclosure sale for $73,681.41. The sale was not confirmed. Commonwealth later paid Meritor $18,080.97 for its claim of loss under the mortgage insurance policy, and then sought to recover that sum from the appellants pursuant to the investor loan indemnity agreement. The appellants refused to pay that obligation under the agreement, and this action ensued.

1. The appellants contend that Commonwealth's action to re-

cover under the loan indemnity agreement was tantamount to an action for a deficiency judgment, and thus should be barred because of the failure to confirm the foreclosure sale in accordance with OCGA § 44-14-161. That statute prohibits an action to obtain a deficiency judgment with respect to real estate sold at a nonjudicial foreclosure sale unless, within 30 days after the sale, the person who instigated the foreclosure proceeding seeks confirmation of the sale by the superior court in the county in which the property is located. The confirmation statute is in derogation of common law and must be strictly construed. *Bentley v. North Ga. Prod. Credit Assn.*, 170 Ga. App. 361 (317 SE2d 339) (1984); *Taylor v. Thompson*, 158 Ga. App. 671 (282 SE2d 157) (1981).

OCGA § 44-14-161 would bar any action by the actual lender to obtain a deficiency judgment. However, Commonwealth was not the lender, and the recovery it sought was not a deficiency. Rather, it was a debt having a completely independent contractual basis, i.e., the loan indemnity agreement between the appellants and Commonwealth.

Although the failure to confirm a foreclosure sale precludes a lender from seeking a deficiency judgment, it does not extinguish the underlying debt. *Turpin v. North American Acceptance Corp.*, 119 Ga. App. 212 (166 SE2d 588) (1969). Further, failure to confirm does not estop even the actual lender from pursuing other contractual security on the debt. *Worth v. First Nat. Bank of Alma*, 175 Ga. App. 297 (333 SE2d 173) (1985); *Taylor v. Thompson*, supra. In the instant case, where the appellants' possible liability to Commonwealth, not the lender, arises from a completely independent source than the debt the appellants owed the lender, Commonwealth's action to recover under the loan indemnity agreement is not barred by the lender's failure to have the foreclosure sale confirmed.

2. The appellants also contend that the loan indemnity agreement violated the public policy codified in the confirmation statute and, for that reason, is unenforceable pursuant to OCGA §§ 1-3-7 and 13-8-2. The purpose of OCGA § 44-14-161 is to protect debtors from deficiency judgments when the forced sale of their property brings less than fair market value. *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327 (1) (270 SE2d 867) (1980). As stated above, despite the appellants' attempt to categorize Commonwealth's action to recover under the loan indemnity agreement as an action seeking a deficiency judgment, it is not. The appellants' possible liability to Commonwealth in this case arises solely under that independent contract voluntarily entered and agreed upon by the appellants in exchange for Commonwealth's issuance of the mortgage insurance policy to the lender. Allowing Commonwealth to hold the appellants to their bargain in the loan indemnity agreement in no way vitiates the protec-

tion the appellants enjoy from the lender seeking a deficiency judgment.

The appellants rely upon *Redman Indus. v. Tower Properties*, 517 FSupp. 144 (N. D. Ga. 1981), as persuasive authority to support their contention that the loan indemnity agreement violated public policy. In *Redman*, the lender and the guarantor executed a Deficiency Debt Agreement which (1) consolidated other outstanding liabilities of the guarantor to the lender, (2) canceled the guaranty of the debtor's note to the lender, and (3) provided that in the event of the debtor's default on the note, the guarantor agreed to pay the lender an additional $700,000. The lender and the guarantor entered this Deficiency Debt Agreement several months prior to the default and foreclosure, and the debtor was not a party to it. Following the foreclosure sale, which was not confirmed, the guarantor paid the lender the $700,000, and then sought to recover that sum from the debtor pursuant to an indemnity agreement. Considering these circumstances, the district court found that the guarantor's action to recover under the indemnity agreement was, in substance, an action seeking a deficiency judgment. However, that conclusion resulted from the court's concerns that the side dealings between the lender and the guarantor constituted a deliberate subterfuge of the confirmation statute. Those concerns are not present in the instant case, and *Redman Indus.* is thus factually distinguishable on that basis.

3. Commonwealth paid Meritor a sum of $18,080.97 in satisfaction of the latter's claim under the mortgage insurance policy. The appellants assert that a material issue of fact exists as to the actual or appropriate amount of the claim, and we agree.

The record contains a certificate of insurance and a claim for loss form, but no copy of the actual insurance policy. The investor loan indemnity agreement executed by Commonwealth and the appellants, however, indicates that the policy would protect the lender "against loss or a portion thereof" by reason of the appellants' default on the loan. In support of its position that its action against the appellants is not an action seeking a deficiency judgment, Commonwealth emphasized that its calculation of the amount of the claim paid to Meritor did not consider the amount brought by the property at the foreclosure sale. That, in fact, appears to have been the case.

The certificate of insurance indicates that the policy would carry a 20 percent coverage of claim, and in its claim for loss form Commonwealth determined that the lender's claim totaled $75,005.97 (representing the balance of principal and interest due, attorney fees, and expenses associated with maintaining the property). The affidavit of the claims counsel for Commonwealth further indicates that the total claim under the policy was $75,005.97, and that Commonwealth paid Meritor approximately 20 percent of that amount, or $18,080.97.

Meritor purchased the property at the foreclosure sale for $73,681.41, and that figure apparently played no part in Commonwealth's determination of the claim due under the mortgage insurance policy. Assuming that, as found by Commonwealth, the appellants' total indebtedness to the lender after the default was $75,005.97, Commonwealth's formula for determining the claim, which resulted in its payment of $18,080.97 to Meritor, goes beyond guaranteeing "against loss or a portion thereof," as specified in the loan indemnity agreement. In this regard, it would appear that Commonwealth's determination of its liability under the insurance policy would have resulted in payment of the same amount to the lender, even if the lender had sustained no loss at the foreclosure sale, e.g., if the property had been sold for an amount equal to or in excess of the indebtedness. Such a result obviously extends the liability agreed to by the appellants in the indemnity agreement.

We also note that Commonwealth's own explanation of how it determined its liability under the insurance policy to be $18,080.97 is inconsistent. As discussed above, the claims counsel for Commonwealth stated that Commonwealth paid Meritor $18,080.97, which represented approximately 20 percent of the total claim of $75,005.97. However, that approximation is a very inaccurate one, inasmuch as 20 percent of $75,005.97 is a total of $15,001.19. (It appears that the $18,080.97 figure was determined by taking 75 percent of the original purchase price of the property ($75,900), or $56,925, and subtracting that amount from the total claim of $75,005.97, but that calculation is not specified in any document in the record and is contrary to the explanation by Commonwealth's claims counsel of how the amount of payment was determined.)

4. For the foregoing reasons, the trial court properly granted summary judgment for Commonwealth and against the appellants on the issues regarding whether Commonwealth could assert its claim under the loan indemnity agreement. However, the inconsistencies in the evidence regarding the actual amount of the claim presented material issues of fact, and summary adjudication of that issue was inappropriate.

*Judgment affirmed in part, reversed in part. Pope, C. J., McMurray, P. J., Birdsong, P. J., Carley, P. J., Beasley, Andrews and Johnson, JJ., concur. Cooper, J., concurs in part, dissents in part.*

COOPER, Judge, concurring in part, dissenting in part.

I agree with the majority's conclusion in Division 3 that a question of fact exists as to the amount of the claim asserted by Commonwealth. However, I dissent because I believe that the loan indemnity agreement violates the public policy encompassed in OCGA § 44-14-161, which requires that an order of confirmation be obtained before

the lender may seek a deficiency judgment against the debtors. " 'The strongest ground of public policy which occurs for the enforcement of statutes requiring confirmation in foreclosure proceedings is to protect the debtor from being subjected to double payment in cases where the property was purchased for a sum less than its market value.' " *First Nat. Bank & Trust Co. v. Kunes*, 128 Ga. App. 565, 566 (197 SE2d 446) (1973). Although the transaction between Commonwealth and appellants was not in the form of a deficiency action, in the interest of justice, it is necessary to look beyond the form of the agreement and examine its substance. See *Redman Indus. v. Tower Properties*, 517 FSupp. 144 (N. D. Ga. 1981). I cannot conclude, as does the majority, that the indemnity agreement is an "independent contract" which "in no way vitiates the protection the appellants enjoy from the lender seeking a deficiency judgment." The execution of the indemnity agreement was a prerequisite to the issuance of mortgage insurance by Commonwealth to the lender from whom appellants sought a loan. I acknowledge the lender's right to insure itself against possible loss resulting from a borrower's default. However, when such insurance is intimately linked to an agreement requiring the debtor to indemnify the insurer for amounts the insurer paid to the insured, the substance and effect of the transaction is to circumvent the protection afforded by OCGA § 44-14-161. I cannot uphold an agreement which so blatantly attempts to deny appellants the protections which the General Assembly found necessary to afford them. Therefore, I must respectfully dissent.

DECIDED FEBRUARY 22, 1993.

*Davidson, Hopkins & Booth, Joseph H. Booth*, for appellants.
*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Wade G. Anderson*, for appellee.