A96A1133. SOUTHEAST TIMBERLANDS, INC. et al. v. HAISEAL TIMBER, INC.
(479 SE2d 443)

JOHNSON, Judge.

A jury returned a verdict in favor of Haiseal Timber, Inc., and against Southeast Timberlands, Inc., and Jewett Tucker, Southeast's president (hereinafter collectively referred to as "Southeast") after Southeast's default under the terms of a promissory note, deed to

secure debt and personal guaranty. Southeast appeals from the judgment entered on the verdict, arguing that the action was actually one for a deficiency judgment, which both parties agree would be barred because Haiseal failed to obtain judicial confirmation of the sale after foreclosing upon the secured property, and that Haiseal had relinquished its interest in one of the two parcels which was the subject of the lawsuit.

The pertinent facts are as follows: Southeast purchased real estate from Haiseal and executed a promissory note in Haiseal's favor for part of the purchase price. The promissory note was secured by a deed to secure debt. The deed to secure debt, likewise, referenced the note. The security deed contained provisions regarding Southeast's rights and duties as to the sale of timber from the secured land, including a clause which provided that Southeast had the right to a release of portions of the secured property upon paying Haiseal 80 percent of the proceeds gained from timber sales from the secured property. It further provided that proceeds from the timber would reduce the principal due on the note. Tucker personally guaranteed payment of the note.

Southeast subsequently entered into a lease agreement with Thompson Hardwoods, Inc., giving Thompson the right to harvest timber from a tract of the secured property. Thompson paid approximately one-half of the purchase price of the lease at closing and executed a promissory note to Southeast for the balance, which was to be repaid from timber proceeds. The remainder was paid in full to Southeast. Southeast paid 80 percent of the money it received from Thompson at closing to Haiseal but did not pay Haiseal 80 percent of the proceeds it received from Thompson as the timber was harvested. Before the lease agreement between Thompson and Southeast closed, Haiseal executed and delivered a quitclaim deed to Southeast relinquishing any interest in the tract.

Southeast also contracted with S. M. Baxter Timber Company, which harvested timber on another tract of the secured property. According to Haiseal, Southeast paid less than 80 percent of the proceeds derived from the sale of timber to Baxter.

When Southeast failed to make its scheduled interest payments under the deed to secure debt, Haiseal foreclosed upon most of the property described by the deed. The Thompson tract was inadvertently omitted from the foreclosure notice and was not foreclosed upon. The price paid at foreclosure was insufficient to satisfy the indebtedness and resulted in a deficiency of approximately $350,000. Haiseal sought confirmation of the sale, but dismissed its petition without prejudice before the court issued a ruling. Haiseal then filed a complaint against Southeast and Tucker, only the first and third counts of which are relevant on appeal. Count 1 alleges that South-

east breached the covenant contained in the deed to secure debt to pay 80 percent of the timber sale proceeds to Haiseal. Count 3 alleges that Tucker was liable based on his personal guaranty. Southeast moved for summary judgment and a directed verdict on the basis that the action was for a deficiency judgment, which was prohibited because Haiseal failed to obtain judicial confirmation of the sale. The trial court rejected the argument and denied the motions. Southeast appeals from the verdict and judgment for Haiseal.

The parties agree that the critical issue is whether Haiseal is simply suing for breach of contract or is seeking a deficiency judgment, which it cannot do since Haiseal failed to confirm the sale. We hold that the action does seek a deficiency judgment as to the Baxter tract. Whether it seeks a deficiency judgment as to the Thompson tract is not as clear because that tract was not listed in the foreclosure notice and arguably was not foreclosed upon. In any event, Haiseal was not entitled to recover for unpaid timber proceeds from the Thompson tract because Haiseal relinquished its entire interest in the tract and its timber by quitclaim deed. Therefore, we reverse the judgment of the trial court.

"[OCGA § 44-14-161] prohibits an action to obtain a deficiency judgment with respect to real estate sold at a nonjudicial foreclosure sale unless, within 30 days after the sale, the person who instigated the foreclosure proceeding seeks confirmation of the sale by the superior court. . . ." *Turner v. Commonwealth Mtg. Assurance Co.*, 207 Ga. App. 428, 429 (1) (428 SE2d 398) (1993). A deficiency judgment is "a judgment for that part of a debt secured by a mortgage not realized from a sale of the mortgaged property." (Citation omitted.) *Hill v. Moye*, 221 Ga. App. 411, 412 (1) (471 SE2d 910) (1996).

## The Baxter Tract

Regardless of the characterization given it by Haiseal, the action pending between Haiseal and Southeast as to the Baxter tract is a deficiency action. Haiseal filed this action only after the property Southeast pledged as security did not bring at the foreclosure sale the amount owed on the note.

Haiseal correctly argues that if Southeast's obligation to pay timber proceeds is an obligation which is independent, unsecured and separate from its obligation under the note, this action is not barred. See *Kennedy v. Trust Co. Bank &c.*, 160 Ga. App. 733, 734-735 (288 SE2d 87) (1981). For example, where there are two separate debts evidenced by two separate notes and secured by two separate security deeds, the failure to confirm foreclosure under one security deed does not bar a creditor from suing on the remaining independent, separate, unsecured obligation. See *Baby Days v. Bank of*

*Adairsville*, 218 Ga. App. 752, 754 (2) (463 SE2d 171) (1995). Even if the obligations are related, where the notes involved are either secured by separate deeds to different properties or are not secured at all, suit on one note after foreclosure without confirmation on the other note is not prohibited. *Ward v. Pembroke State Bank*, 212 Ga. App. 322, 324 (441 SE2d 691) (1994). In this case, however, the obligation to share the proceeds was not independent, separate, or unsecured.

The promissory note signed by the parties expressly provided that it was secured by the deed to secure debt; the deed to secure debt provides that it was intended to secure the debt shown in the promissory note; the timber covenant which was allegedly breached is found in that security deed; a violation of the timber provision constitutes a default under the deed to secure debt; and a default under the security deed authorizes foreclosure on the property. Moreover, the timber sale proceeds were expressly intended to reduce the amount of the debt contemplated by the note and secured by the security deed. There was but one promissory note and one deed to secure debt, and the only obligation Southeast owed Haiseal was this note secured by the foreclosed property. See *Hill v. Moye*, supra. " '*When the instrument sued upon is embraced by the previous foreclosure, it is a deficiency judgment.*' " (Citations omitted; emphasis supplied.) *Ward*, supra at 324.

Were we to permit Haiseal to sue on the same note after foreclosure and without confirmation, we "would allow the creditor to avoid, without substantial justification, the very purpose of the confirmation statute; that being to protect debtors from deficiency judgments when their property is sold at foreclosure sale for less than its market value. [Cit.]" Id. Southeast's promise to repay the debt to Haiseal and the security deed's provision allowing Southeast to satisfy the debt by paying Haiseal a portion of the timber proceeds from the secured property are inextricably intertwined. See *C. K. C. v. Free*, 196 Ga. App. 280, 282-283 (2) (395 SE2d 666) (1990); see also *Tufts v. Levin*, 213 Ga. App. 35 (443 SE2d 681) (1994). A verdict in Southeast's favor was demanded as a matter of law, and the trial court erred in denying its motion for directed verdict. See generally *Alexie, Inc. v. Old South Bottle Shop Corp.*, 179 Ga. App. 190, 194 (5) (345 SE2d 875) (1986).

### The Thompson Tract

Southeast contends that a directed verdict was authorized as to the Thompson tract for two reasons: (1) Haiseal relinquished any right to timber proceeds when it executed and delivered a quitclaim deed to the tract; and (2) the action was for a deficiency judgment

even though the tract was omitted from the foreclosure notice; the two tracts could not properly be treated as separate parcels during or after foreclosure because the land was pledged for payment of the debt in its entirety and had to be sold as a whole. See *Doyle v. Moultrie Banking Co.*, 163 Ga. 140, 142-143 (135 SE 501) (1926). We need not decide the latter issue, however, because it is clear that Haiseal no longer had any interest in the Thompson tract at the time it commenced this action.

Haiseal executed and delivered a quitclaim deed to Southeast which released all of its interest in the tract, relinquishing any claim, right or title to the premises or its appurtenances. Where a grantor of a quitclaim deed assigns all its right, title, interest, claim or demand in the tract of land conveyed, it is estopped from asserting any title to or interest in the property conveyed, acquired previously to the execution of the quitclaim deed. *McDonald v. Dabney*, 161 Ga. 711, 714 (9) (a) (132 SE 547) (1926). Haiseal argues that the quitclaim deed was ineffectual because the parties had a verbal agreement that delivery of the deed was conditioned upon the assignment of Thompson's promissory note to Haiseal. The quitclaim deed, however, contains no conditions as to its delivery or validity. Further, it specifically indicates that Haiseal received valuable consideration before the deed was executed and delivered. A grantor cannot engraft upon a written quitclaim deed an oral contract which would impose an additional affirmative obligation upon the grantee. *Dodson v. Phagan*, 227 Ga. 480, 482 (181 SE2d 366) (1971). Similarly, parol evidence is not admissible to place conditions upon a quitclaim deed which is absolute on its face. *Harden v. Orr*, 219 Ga. 54, 55 (1) (131 SE2d 545) (1963). Inasmuch as the quitclaim deed passed title to the parcel and its appurtenances to Southeast, Haiseal's interest therein was extinguished. See generally *McDonald*, supra. There is no conflict in the evidence on the material issue of the terms of the quitclaim deed, regardless of any testimony from witnesses purporting to give their understanding of the deed and the existence of any conditions thereto. The trial court erred in denying Southeast's motion for directed verdict. See *Alexie, Inc.*, supra.

*Judgment reversed. Birdsong, P. J., Andrews and Ruffin, JJ., concur. Blackburn and Smith, JJ., concur specially. Beasley, C. J., McMurray, P. J., and Pope, P. J., dissent.*

BLACKBURN, Judge, concurring specially.

I agree with the conclusion reached by the majority that Haiseal Timber's action is, in reality, a deficiency action barred by OCGA § 44-14-161 because Haiseal failed to obtain confirmation of its non-judicial foreclosure. Southeast Timberlands' promissory note to Haiseal was secured by a single security deed listing numerous

pieces of property. The "default" on which Haiseal based its foreclosure was the claimed violation of a clause in that security deed. As the majority opinion correctly concludes, the obligation allegedly created by that clause was not independent but was part and parcel of the secured transaction.

However, I cannot agree with all that is said in the majority opinion, for it improperly concludes that 1) Haiseal quitclaimed title to the "Thompson" tract to Southeast and 2) that this quitclaim somehow represented an accord and satisfaction. The quitclaim deed itself specifies that it transfers title only to certain timber growing on the property, and it makes no mention of any intent to satisfy a debt. The boilerplate printed language at the bottom of the deed waiving "any right or title to said premises or appurtenances, or any rights thereof" cannot overcome the stated, limited transfer specified. See *Massey Assoc., Ltd. v. Whitehorse Inns of Ga.*, 265 Ga. 320, 322 (454 SE2d 513) (1995).

The majority's overstatement of the effect of this quitclaim deed, however, does not affect the result in this case. Haiseal foreclosed under a power of sale contained in this single security deed. Pursuant to the plain language of OCGA § 44-14-161, "[w]hen any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, . . . and at the sale the real estate does not bring the amount of the debt secured by the deed, . . . *no action may be taken to obtain a deficiency judgment* unless the person instituting the foreclosure proceedings . . . shall obtain an order of confirmation." (Emphasis supplied.) Strictly construing this language as we must, it bars Haiseal's deficiency action. See *Mobley v. Commonwealth Mtg. Assurance Co.*, 264 Ga. 652, 654 (450 SE2d 205) (1994) (confirmation statute must be strictly construed). Southeast defaulted on its obligations, Haiseal foreclosed, it failed to confirm, and it may not now sue for a deficiency whether or not it failed to foreclose on a portion of the property described in the single security deed. "When the instrument sued upon is embraced by the previous foreclosure, it is a deficiency judgment. [Cits.]" (Punctuation omitted.) *Ward v. Pembroke State Bank*, 212 Ga. App. 322, 324 (441 SE2d 691) (1994). It is the *action for deficiency* which the statute bars, and Southeast is protected from such an action as if it had been discharged in bankruptcy. *Turpin v. North American Acceptance Corp.*, 119 Ga. App. 212, 217 (1) (166 SE2d 588) (1969). While not addressing whether or not Haiseal could now foreclose on the Thompson tract, it is prohibited from seeking a deficiency judgment on this instrument. Compare *Worth v. First Nat. Bank of Alma*, 175 Ga. App. 297, 298 (1) (333 SE2d 173) (1985) (failure to confirm a nonjudicial sale does not prohibit foreclosure on additional security on the debt) with Pindar, Ga. Real Estate Law, § 21-59 (3rd ed.) ("[t]he basic

equity rule is that only one foreclosure of a mortgage will be allowed, and the same rule applies to security deeds").

I am authorized to state that Judge Smith joins in this special concurrence.

MCMURRAY, Presiding Judge, dissenting.

I, respectfully, dissent because I cannot go along with the majority's holding that Haiseal's claim against Southeast is nothing more than a veiled attempt to collect a deficiency judgment without judicial confirmation. Neither Haiseal's claim against Southeast nor the jury's verdict is based upon a deficiency under the promissory note. Haiseal's claim against Southeast, as well as the jury's verdict, is based upon Southeast's failure to turn over proceeds from the sale of collateral (timber) off the Baxter and Thompson tracts. The majority nonetheless holds that this judgment is void — absent confirmation under OCGA § 44-14-161 — because Southeast's obligation to pay Haiseal for the harvested timber springs from the same note and security deed which authorized Haiseal's foreclosure of Southeast's interest in the property. It is my view that this logic superficially discounts the rule that a lender's failure to confirm a foreclosure sale does not estop the lender from pursuing other contractual security on the debt. See *Turner v. Commonwealth Mtg. Assurance Co.*, 207 Ga. App. 428 (1) (428 SE2d 398). To this end, I believe Southeast's duty to compensate Haiseal for diminishing the collateral (timberland) is not the same as Southeast's promise to pay principal and interest under the promissory note. I would therefore affirm the trial court's determination that confirmation is not mandatory before holding Southeast to its promise to pay Haiseal for cutting timber from the Baxter tract. Saying otherwise, in my view, not only ignores the jury's finding that Southeast unfairly profited from the timber sale, but also overlooks the fact that Southeast — by retaining the entire worth of the collateral — was not in danger at the foreclosure sale of being victimized by injustices the confirmation statute was designed to overcome, i.e., exposing debtors to double payment in cases where collateral is sold for less than its fair market value. See *Redman Indus. v. Tower Properties*, 517 FSupp. 144, 148-150 (N.D. Ga. 1981).

I also disagree with the majority's holding that Haiseal relinquished its right to recover timber proceeds from the Thompson tract by providing Southeast with a "QUITCLAIM DEED." While this instrument may have effectively transferred certain rights to Southeast, it did not extinguish Southeast's obligation to pay Haiseal for the timber that was harvested from the Thompson tract. See *Morris v. Johnson*, 219 Ga. 81, 83 (1), 85 (132 SE2d 45).

## The Baxter Tract

" 'Although the failure to confirm a foreclosure sale precludes a lender from seeking a deficiency judgment, it does not extinguish the underlying debt. Further, failure to confirm does not estop even the actual lender from pursuing other contractual security on the debt.' (Citations omitted.) *Turner*[ *v. Commonwealth Mtg. Assurance Co.*, 207 Ga. App. 428 (1), 429,] supra." *Lund v. Commonwealth Mtg. Assurance Co.*, 216 Ga. App. 322, 324 (2) (454 SE2d 194). That is, "[t]he confirmation statute does not bar [the lender from pursuing] a subsequent action 'to recover on an independent, separate, unsecured obligation. . . .' *Murray v. Hasty*, 132 Ga. App. 125, 126 (207 SE2d 602) (1974)." *Kennedy v. Trust Co. Bank &c.*, 160 Ga. App. 733, 734 (288 SE2d 87). The controlling question in the case sub judice, then, is whether the majority is correct in holding that Southeast's obligation to pay Haiseal 80 percent of the timber sale proceeds is not such an independent, separate, unsecured obligation.

In *Turner v. Commonwealth Mtg. Assurance Co.*, 207 Ga. App. 428 (1), 429, supra, a lender's private mortgage insurance carrier required the borrowers to execute an indemnity agreement covering the insurer against loss by reason of the borrowers' default. When a subsequent foreclosure sale failed to satisfy the underlying debt, the borrowers refused to indemnify the private mortgage insurance carrier for the lender's losses because the lender failed to have the foreclosure sale confirmed. The borrowers reasoned that the indemnity agreement was merely a subterfuge for avoiding compliance with the confirmation statute. Id. at 429 (2), 430. The Court of Appeals rejected this reasoning, holding that the lender's failure to confirm the foreclosure sale did not preclude enforcement of the indemnity agreement because — even though the indemnity agreement was an essential element of the underlying loan transaction — the indemnity agreement was a "completely independent source than the debt the [borrowers] owed the lender. . . ." Id. at 428 (1), 429. I find no material difference between this holding and the circumstances in the case sub judice.

Just as it was obvious that the indemnity agreement in *Turner* was a completely separate promise than the debtor's obligation under the promissory note, it is obvious to me in the case sub judice that Southeast's duty to compensate Haiseal for selling timber off the encumbered premises is an entirely different obligation than Southeast's promise to make regular principal and interest payments under the promissory note. Further, like the indemnity agreement in *Turner*, Southeast's promise to pay Haiseal a percentage of the timber sale proceeds was merely an additional means of securing the underlying loan transaction. Moreover, Southeast's obligation to

share timber sale proceeds with Haiseal — unlike Southeast's principal and interest payment obligations — only vested after Southeast sold timber off the encumbered property. Under these circumstances, I believe that Haiseal's claim for the timber sale proceeds is based upon a separate, distinct and unsecured obligation. I would therefore affirm the trial court's determination that Southeast should not be allowed to dishonor its promise to share its timber sale profits with Haiseal simply because Haiseal did not have the underlying foreclosure sale confirmed. Saying otherwise, in my view, ignores the jury's finding that Southeast unfairly profited from the sale of timber off the encumbered land and overlooks the fact that Southeast — by retaining the entire worth of the collateral — was not in danger of being victimized by injustices the confirmation statute was designed to overcome, i.e., exposing debtors to double payment in cases where collateral is sold for less than its fair market value. See *Redman Indus. v. Tower Properties*, 517 FSupp. 144, 148-150, supra.

### The Thompson Tract

I also disagree with the majority's holding that Haiseal relinquished its right to recover proceeds from the sale of timber from the Thompson tract by giving Southeast a "QUITCLAIM DEED."[1] While this instrument may have effectively transferred certain rights to Southeast, it did not extinguish Southeast's obligation to pay Haiseal for the timber that was harvested from the Thompson tract. "The . . . fact that such sum was not actually paid . . . creates a liability upon the purchaser which may be enforced in an action at law." *Morris v. Johnson*, 219 Ga. 81, 83 (1), 85, supra.

I am authorized to state that Chief Judge Beasley and Presiding Judge Pope join in this dissent.

DECIDED DECEMBER 5, 1996 —
RECONSIDERATION DENIED DECEMBER 19, 1996 — 

*Martin, Snow, Grant & Napier, John T. McGoldrick, Jr., Linwood R. Lovett*, for appellants.

---

[1] The instrument Haiseal gave Southeast is a form document entitled, "QUITCLAIM DEED," which conveys to Southeast "[a]ll trees and timber, regardless of species or size, standing, growing, lying or being upon the property set forth hereinbelow, save and except, white oak and pine." Consequently, the majority incorrectly states that "Haiseal executed and delivered a quitclaim deed to Southeast relinquishing any interest in the tract," and for the same reason, the majority also wrongly concludes that "Haiseal no longer had any interest in the Thompson tract at the time it commenced this action [and that] Haiseal executed and delivered a quitclaim deed to Southeast which released all of its interest in the tract, relinquishing any claim, right or title to the premises or its appurtenances."

*Westmoreland, Patterson & Moseley, Thomas H. Hinson II,* for appellee.